# Order

Michigan Supreme Court
Lansing, Michigan

July 23, 2021

Bridget M. McCormack,
Chief Justice

Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch,
Justices

161915 & (14)

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellee,

v

                                            SC: 161915
                                            COA: 353965
                                            Van Buren CC: 2019-021950-FC

JOSE HUMBERTO CANEDO,
      Defendant-Appellant.
_____/

On order of the Court, the motion to amend the application for leave to appeal is GRANTED. The application for leave to appeal the July 31, 2020 order of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

CAVANAGH, J. (*concurring*).

I concur in the order denying leave in this case, but write separately to discuss some questions regarding the use of the Correctional Offender Management Profiling for Alternative Sanctions (COMPAS) software tool during a defendant's sentencing. Generally, the Michigan Department of Corrections (MDOC) has used risk assessment to make internal decisions about programming and placement. However, the extension of that practice from informing the MDOC's work after sentencing to informing the sentencing decision seems consequential.

The COMPAS software tool creates a risk assessment "intended to measure the 'likelihood of future Violent or Non-Violent Felony Offenses.' " *People v Younglove*, unpublished per curiam opinion of the Court of Appeals, issued February 21, 2019 (Docket Nos. 341901, 342497, 342598, and 344475), quoting MDOC, Field Operations Administration, *Administration and Use of COMPAS in the Presentence Investigation Report* (March 2017), p 10, available at https://www.michbar.org/file/news/releases/archives17/COMPAS-at-PSI-Manual-2-27-17-Combined.pdf (accessed July 15, 2021) [https://perma.cc/YB5S-D3WL]. This assessment is created through a proprietary algorithm that takes data inputs including criminal history, age, employment status, education level, community ties, substance abuse, and more. The algorithm's output is an assessment that purports to represent the probability a defendant will engage in future criminal conduct. See generally *Administration and Use of COMPAS*; see also *State v Loomis*, 371 Wis 2d 235, 245 (2015).

Due process requires that a defendant be sentenced on the basis of accurate

information, *People v Francisco*, 474 Mich 82, 88 (2006), and a defendant must have "a reasonable opportunity at sentencing to challenge the information" contained in the presentence investigation report (PSIR), *People v Zinn*, 217 Mich App 340, 347-348 (1996). However, in the context of COMPAS risk assessments, it is unclear to me what it might mean to measure the accuracy of a prediction about an individual's future conduct and how that prediction might be challenged without knowing how it was formulated. See *Loomis*, 371 Wis 2d 235 (limiting the use of COMPAS at sentencing and mandating that written warnings accompany any COMPAS attached to a PSIR). One evaluation of the COMPAS tool, which was prepared for the California Department of Corrections and Rehabilitation (CDCR), concluded there was " 'no sound evidence that the COMPAS can be rated consistently by different evaluators, that it assesses the criminogenic needs it purports to assess, and (most importantly) that it predicts inmates' recidivism for CDCR offenders.' " *Id*. at 262, quoting Skeem and Loudon, *Assessment of Evidence on the Quality of the Correctional Offender Management Profiling for Alternative Sanctions (COMPAS)* (2007), p 5, available at <http://risk-resilience.berkeley.edu/journal-article/assessment-evidence-quality-correctional-offender-management-profiling-alternative> (accessed July 15, 2021) [https://perma.cc/PR5D-6N6A].

The algorithm COMPAS employs is proprietary, and undisclosed. *Loomis*, 371 Wis 2d at 258. The secretive nature of the algorithm raises questions. Without knowing what the algorithm is, it is difficult to know whether and how race, class, and other personal factors influence a potentially biased score. One investigation, for example, concluded that Black defendants " 'were far more likely than white defendants to be incorrectly judged to be at a higher risk of recidivism.' " *Id*. at 263, quoting Larson et al, ProPublica, *How We Analyzed the COMPAS Recidivism Algorithm* (May 23, 2016), available at <https://www.propublica.org/article/how-we-analyzed-the-compas-recidivism-algorithm> (accessed July 15, 2021) [https://perma.cc/AP85-5EDE]. Additionally, in order to be accurate and mitigate these possible errors, risk assessment tools " 'must be constantly re-normed for changing populations and subpopulations.' " *Loomis*, 371 Wis 2d at 263-264, quoting Klingele, *The Promises and Perils of Evidence-Based Corrections*, 91 Notre Dame L Rev 537, 576 (2015). It is unclear whether COMPAS regularly updates its software accordingly.

The many criticisms that such risk assessments have drawn from public officials and scholars create concerns about the use of COMPAS in sentencing. However, defendant has not fully raised these issues in this Court. Accordingly, I concur in the order denying leave to appeal.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 23, 2021



Clerk

b0720